## Louis Coussy et als. *v.* Adelaide Vivant et als.

*A.*, executrix of the estate of *B.*, left the State, after having appointed *C.* as her agent. Certain property of the estate was afterwards sold by order of court, and the price in cash and notes paid over to *C.* as the agent of the executrix. Shortly after *A.* died, and *C.*, the agent, was appointed executor of *B.*'s estate, and in that capacity collected the part of the price unpaid. No account of the price was rendered to the heirs of *B.* by the representatives of *A.*, and her successor in office rendered no account thereof.

*Held:* That the failure to deposit the power of attorney of the executrix in the office of the Recorder of Mortgages did not affect the validity of the proceedings under which the property was sold.

That the heirs of the executrix, at whose instance the property was sold, could not be made liable for the price: 1st, because the part of the price unpaid at her death was properly paid to her successor in office, and 2d, because the cash payment having been made to *C.*, as agent of *A.*, in her capacity as executrix, he is presumed to have been in possession of the amount at the death of *A.*, and when afterwards appointed the successor in office of *A.*, to have kept possession of the fund in that capacity.

APPEAL from the Second District Court of New Orleans, *Lea,* J.

*E. Filleul,* for plaintiffs and appellants.   *J. Seghers,* for *A. Vivant,* appellee.   *S. L. Johnson,* for *Faught et al.*, appellees.

Merrick, C. J.   The plaintiffs allege that they are the testamentary heirs of *Victoire Marcos Tio,* a free woman of color, their aunt, who departed this life in June, 1837. That petitioners have been recognized as her heirs, and put in possession of her estate.   That she appointed *Marie Lavaux,* f. w. c., separated in bed and board from her husband, *François Auguste,* testamentary executrix.   That the executrix took the oath, and received letters testamentary, June 28th, 1837.   That about the end of March, 1839, the said executrix left the city of New Orleans, and the State of Louisiana, without informing or obtaining leave of the court, or having been discharged, or having filed an account of her administration.   That before she left she made a power of attorney to *L. Ferrand,* f. m. c., but did not deposit and record said power in the office of the Judge who had appointed her, and before whom the succession was opened. That during her absence the proceedings were conducted by an attorney at law in the same manner as if she were present in court and within the jurisdiction and control of the court of probates.   That when she was absent, upon such petition, the sale of all the immovables was ordered, and on the 13th day of May, 1839, a certain lot of ground, belonging to said succession, was sold and adjudicated to *Adelaide Vivant,* for $3200, payable one-third cash, the balance in two equal instalments, at six and twelve months' credit.   That in the act of sale, *Louis Ferrand,* under the power of attorney referred to, appeared as the agent of *Marie Lavaux.*   That the price was not not brought into court and placed under the jurisdiction of the court, and was not paid under the sanction and authority of the court.   That said payment, if it ever took place, was made without the authorization of the court which controls every act of the executor and administrator, or of his duly authorized agent.   That said *Ferrand* had no authority to divest the succession of title to its property, or to receive payment of the sum due the succession by *Adelaide Vivant,* and such payment is null. That *Adelaide Vivant* cannot avail herself of the plea of good faith, because she was well aware of the incapacity of *Ferrand,* and of the absence of the executrix at the time of said pretended payment.   That at the time of the

alleged payment petitioners were minors unable to attend to their interests. That said *Marie Lavaux* died in the city of Paris, France, ten days after the said sale, to wit: on the 22d day of June, 1839. That she or her heirs never rendered an account of her administration. That no part of the price of said property has ever been accounted for or placed under the control of the court. That the succession of *Marie Lavaux* has been opened, and the defendants (except said *Adelaide Vivant*) are her heirs, and that they and said *Adelaide Vivant* are responsible to petitioners for said price, with five per cent. interest thereon per annum.

The petition concludes with a prayer that the heirs of said *Marie Lavaux*, each for their verile shares, and said *Adelaide Vivant, in solido* with them, be decreed to pay petitioners $3200, with five per cent. interest from the 13th day of April, 1839, with a privilege and a mortgage upon the property sold.

From the petition, therefore, it appears that plaintiffs expect to recover from the defendant, *Adelaide Vivant,* because she was not justified in making payment to *Ferrand,* and from the heirs of *Marie Lavaux,* because she (*Marie Lavaux*) left the State and did not cause her power of attorney to be deposited in the office of the Judge who appointed her; because the receipt of the money and notes by *Ferrand* was the receipt of money by herself, and because she did not render any account.

The plaintiffs, previously to the institution of this suit, brought an action to have the lot of ground, the price of which is the object of the present suit, declared to be the property of the plaintiffs, on account of certain alleged irregularities in the sale. That case was finally decided against the plaintiffs by the decree of this court in December, 1854. The present action for the price was also decided against the plaintiffs by the lower court, and they have appealed.

There is no ground for the action against *Adelaide Vivant.* The letters testamentary conferred upon *Marie Lavaux* the power to administer the estate as executrix. Her departure from the State, after making her power of attorney, did not, as the law then stood, have the effect *ipso facto* to deprive her of her office, notwithstanding the copy of the power of attorney does not appear to have been deposited with the Judge. It required some action of the court appointing her to declare the office to be vacant. But the court, so far from making such order, recognized her acts, and at her instance ordered the sale of the property, the price of which is in question in this case. She was, therefore, in office, and the receipt of the money due by the debtor of the succession, by *Ferrand,* her agent, was a valid payment, and discharged the debtor for the $1066 66⅓, the instalment in cash made during the lifetime of *Marie Lavaux,* the executrix.

The two promissory notes were paid to *Ferrand* whilst he was executor, and had capacity to receive the money. Those payments were also valid.

Now, are the heirs of *Marie Lavaux* bound for these payments? It is shown that the executrix died in Paris, on the 22d day of June, 1839, just twelve days after *Ferrand,* the agent, acknowledged, by notarial act of sale, to have received the first instalment of the price in cash, and the promissory notes falling due in six and twelve months thereafter.

*Ferrand* was appointed dative testamentary executor, and qualified as such on the 2d day of December, 1839. As to the two notes not matured at the time of the death of *Marie Lavaux,* it cannot be seriously contended that her heirs are responsible for the payment made by *Adelaide Vivant* to *Ferrand,*

Coussy
v.
Vivant.

who was at that time executor. The payment of the notes we have already said was valid.

But in regard to the instalment in cash, it is possibly not so clear at the first view who is bound to account for it to the plaintiffs, *Ferrand* or the heirs of *Marie Lavaux*. We will, therefore, consider how the matter stands. It is certain that, after the death of *Marie Lavaux*, her heirs did not represent the succession of *Victoire Marcos Tio*. They were, so far as the latter succession was concerned, third persons. It is equally clear that, after the appointment of *Ferrand* as dative testamentary executor, he did represent the succession of the testatrix, *Tio*, for the purpose of collecting the property sold for the payment of debts, and to pay such debts. It is equally clear that in collecting the instalment of cash, *Ferrand* was not the agent of *Marie Lavaux* in her individual capacity but as executrix. The fund, therefore, which he had collected belonged to the estate. It was not the private property of *Marie Lavaux*, but the property of the succession.

The agent who has the fund of his principal in his hands is *quoad* the fund only a depositary. He cannot use it (which is presumed to exist in his hands in *specie*) without committing a crime.

Now, suppose the heirs of *Lavaux* had sued *Ferrand* immediately after his appointment as executor for the $1066 66½, received by him as agent for *Marie Lavaux*, executrix, alleging that they were bound to account to the succession of *Victoire Marcos Tio* for this money, could not *Ferrand* have replied successfully: "It is true that this money is in my hands, but I did not receive it for your mother in her individual capacity, which you alone represent; I received it for *the executrix* of the last will and testament of *Tio*, and as I am now executor of her will, I am bound to account to no one but myself."

It would seem that the heirs of *Lavaux* could no more take this money out of the hands of the dative testamentary executor who had possession of and, by his appointment, title to the money, than they could a slave or a piece of real estate. If the heirs could not recover this money from the dative testamentary executor, they are not bound to the heirs of *Tio* for it.

As the money is by law presumed to be in the hands of the agent, who is not supposed to have committed the crime of embezzlement, it must follow that his sureties are *prima facie* bound with him for its faithful administration. If the surety would relieve himself from such objection, he should at least show that the agent had not only embezzled the fund before his appointment as executor, but also that he was insolvent at that time. Finding, therefore, that the fund in controversy has gone into the hands of *Ferrand* as executor, the plaintiff must be left to such remedy as they have against him and his surety. There is no reason to disturb the judgment of the lower court, and we consider what we have here said a sufficient answer to the other questions raised by plaintiffs' counsel.

Judgment affirmed.